UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY BUCKLEW,

    Plaintiff,

v.                                        Case No: 8:19-cv-2029-TPB-AAS

CHARTER COMMUNICATIONS,
INC.,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on "Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law," filed on December 9, 2020. (Doc. 36). Plaintiff filed a response in opposition to the motion on January 19, 2020. (Doc. 44). Defendant filed a reply on February 16, 2021. (Doc. 50). Based on the motion, response, reply, court file, and record, the Court finds as follows:

**Background**

Plaintiff Gary Bucklew worked for Bright House Networks from 2006 to 2016, when Defendant Charter Communications took over operations from Bright House and became Plaintiff's employer. As a Business Solutions Field Supervisor, Plaintiff supervised a team of about 20 agents. The agents accepted calls from approximately 100 field technicians who provided services to Charter customers.

Plaintiff's desk was in a raised cubicle on the dispatch center floor where his team worked and adjacent to the work areas for other teams.

Plaintiff testified he was prescribed opioids to treat pain resulting from a neck injury, arthritis and/or anxiety, but Plaintiff's taking these medications did not impact his work directly. In 2016, he asked for and received FMLA leave to participate in a detoxification program to reduce the dosage of his medications. He returned to work and continued in his same position without issue.

On April 7, 2017, however, Plaintiff's supervisor, Manager Roger Worden, observed that Plaintiff was unresponsive to messages and sounded groggy. He later observed Plaintiff sleeping at his desk.[1] Worden woke Plaintiff and told him that if Worden returned and found Plaintiff asleep again, he would be sent home. On April 18, 2017, Worden received complaints that Plaintiff was disturbing others with personal calls while at his desk. Worden counseled Plaintiff to keep personal calls to a minimum and avoid disturbing others. Plaintiff responded that it would not happen again. On April 27, 2017, Plaintiff attended a company barbecue where he

---

[1] In his deposition, Plaintiff admitted at least one instance of sleeping at his desk and did not deny that other instances occurred, even when given the opportunity to do so. Instead, he repeatedly testified that he did not recall or did not know about other incidents, although he expressed skepticism that they occurred. Plaintiff's lack of recollection does not create an issue of fact on this point. *See, e.g., Riordan v. O'Shea*, 448 F. App'x 928, 930 (11th Cir. 2011). In opposing summary judgment, however, Plaintiff filed a declaration asserting that he only slept at his desk once and that the other instances did not occur. For the reasons set forth in the Court's Order on Defendant's motion to strike Plaintiff's declaration, the Court will disregard these and other paragraphs of the declaration that, without any explanation, contradict Plaintiff's deposition testimony. The Court will also disregard portions of the declaration constituting legal conclusions, speculation, and hearsay.

was given tasks to perform. Both Worden and Saldarriaga observed that Plaintiff appeared disoriented and lethargic and was slurring his words.

On May 3, 2017, Worden received another complaint from Plainitff's co-workers about Plaintiff making personal calls. Worden again counseled Plaintiff on the issue and the next day communicated with Defendant's human resources department about possible corrective action for ongoing problems with Plaintiff. However, no formal action was taken at that point.

On August 3, 2017, Worden sent an instant message to Plaintiff stating that he noticed Plaintiff falling asleep at his desk again. Plaintiff responded that he would be "extra careful about appearing drowsy" and that it was "not a repeat performance, promise." (Doc. 36-3 at 137-38). On August 9, 2017, Plaintiff failed to complete a document and failed to schedule interviews with job applicants, requiring Worden to contact the human resources department to schedule the interviews. On August 10, 2017, Worden observed Plaintiff again making a personal call from his desk, loudly disputing an insurance bill.

On August 11, 2017, Worden received complaints that Plaintiff had been observed exhibiting strange behavior and conversation and was asleep at his desk. Worden himself observed this conduct and he called over Director David Saldarriaga, Worden's supervisor, who also observed it. Saldarriaga awakened Plaintiff and warned him that this conduct was unacceptable. Worden and Saldarriaga thereupon recommended to the human resources department that

Plaintiff be formally disciplined.  The human resources department agreed that disciplinary action should be taken.

On August 16, 2018, however, before any further action by Defendant, Plaintiff went on FMLA leave to enter a detoxification program to withdraw completely from the use of opioids.  On August 17, 2017, while on leave, Plaintiff e-mailed co-employees stating that his doctors expected him to be fully recovered by August 25, 2017 and to be able to return to work "100%" by August 28, 2020.  (Doc. 36-3 at 201).  Plaintiff stated that he was "working with doctors to find the right combination of medications that will put an end to a combination of the narcolepsy (uncontrollable daytime sleeping), and hopefully I can become a valuable member of the team again, and for some time to come."  (*Id.*)

Plaintiff returned from his FMLA leave on August 28, 2017.  On September 5, 2017, Plaintiff failed to ensure coverage for routing of field technicians in Tampa, resulting in a two-hour gap in coverage.  The same day, Worden and Saldarriaga, along with Anna Ciserano from Defendant's human resources department, met with Plaintiff and counseled him regarding sleeping on the job and other performance issues.  They specifically warned Plaintiff that further problems could result in termination.  On September 13, 2017, Plaintiff was again observed asleep at his desk, and at that point Worden and Saldarriaga recommended that Plaintiff be terminated.  Worden, Saldarriaga, Vice President John Doctor, and Regional Vice President Mike Robertson participated in the decision to terminate Plaintiff.

Saldarriaga, Worden, and Ciserano met with Plaintiff on September 18, 2017 and informed him of the decision.

Plaintiff filed this lawsuit alleging claims for disability discrimination and failure to accommodate a disability under the Florida Civil Rights Act ("FCRA"), interference with benefits under the Family Medical Leave Act ("FMLA), and retaliation under the FMLA. Defendant has moved for summary judgment on these claims.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable

inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### *FCRA Discrimination*

Disability discrimination claims under FCRA are governed by the same principles as claims under the Americans with Disabilities Act ("ADA"). *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). To establish a prima facie case of discrimination, Plaintiff must show: (1) that he has a disability; (2) that he is a "qualified individual" such that he could perform the essential functions of his position with or without accommodation; and (3) that he was discriminated against because of his disability. *See, e.g.*, *Berard v. Wal-Mart Stores E., L.P.*, 8:10-cv-2221-T-26MAP, 2011 WL 4632062, at *2 (M.D. Fla. Oct. 4, 2011).

Disability discrimination includes both failing to provide the employee with a reasonable accommodation for the disability and subjecting the employee to disparate treatment because of the disability. *See Holly*, 492 F.3d at 1261-62; *Toliver v. City of Jacksonville*, 3:15-cv-1010-J-34JRK, 2017 WL 1196637, at *5 (M.D. Fla. Mar. 31, 2017). Plaintiff alleges both types of discrimination.

Defendant raises multiple arguments in support of summary judgment on Plaintiff's discrimination claims. Because the Court finds the arguments discussed below dispositive, the Court will not address the other points Defendant has raised. The discussion below therefore assumes, without deciding, that Plaintiff properly exhausted his administrative remedies, that he properly pled the claims he

currently asserts, that he had a disability (specifically, the symptoms resulting from opioid withdrawal), and that the claimed disability is entitled to protection under FCRA.

Failure to Accommodate

Defendant argues that Plaintiff was not a "qualified" person entitled to relief under FCRA, a requirement for both failure to accommodate and disparate treatment claims. To be "qualified," the employee must be able to perform the essential functions of the job, even if reasonable accommodation is needed to allow him to do so. *See, e.g.*, *Cremeens v. City of Montgomery, Ala.*, 427 F. App'x 855, 857 (11th Cir. 2011) ("If the particular function is essential, an ADA plaintiff must show that he can perform it either without accommodation or with a reasonable accommodation) (internal quotation omitted); *Morris-Huse v. GEICO*, 748 F. App'x 264, 267 (11th Cir. 2018) (citing *Holly*, 492 F.3d at 1256). An accommodation is reasonable "only if it enables *the employee* to perform the essential functions of the job." *Holly,* 492 F.3d at 1256. (emphasis added).

Plaintiff supervised 20 agents who took calls from 100 field technicians. His duties were "fast paced and fluid" and included dealing with service outages and other emergencies. (Doc. 36-3 at 62). There is no doubt that remaining awake and alert throughout the day was essential to Plaintiff's job as a supervisor, and Plaintiff does not contend otherwise. *See, e.g.*, *Smith v. Sturgill*, 516 F. App'x 775, 776-77 (11th Cir. 2013) (security officer who could not remain awake due to sleep apnea was "unable to fulfill the essential functions of a Security Officer as

established by the job posting and affidavits from Weiser management"); *Tsuji v. Kamehameha Sch.*, No 14-206 JMS-BMK, 154 F. Supp. 3d 964, 977 (D. Haw. 2015) (collecting cases), *aff'd,* 678 F. App'x 552 (9th Cir. 2017).  As the Fifth Circuit has observed, "maintaining consciousness is a basic element of any job." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 583-84 (5th Cir. 2020), *cert. denied sub nom. Clark v. Inco Champion Nat'l Sec., Inc.*, 141 S. Ct. 662 (2020).  Furthermore, Defendant's employee handbook expressly warned that sleeping on the job constituted unprofessional conduct that would subject the employee to corrective action, including termination.  (Doc. 36-2 at ¶ 9).

Yet Plaintiff was observed asleep at his desk multiple times from April to September 2017, both before and after his August 2017 FMLA leave.  He was counseled on this conduct more than once, and the last of these incidents took place only a week after he had been warned that his job was in danger.  Plaintiff responds that he had performed well *in the past,* but this contention fails to address Defendant's central point that Plaintiff's sleeping on the job in 2017 rendered Plaintiff unable to perform the essential function of remaining awake and alert.  *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) ("The ADA covers people who can perform the essential functions of their jobs presently or in the immediate future.").

An employee with a disability may still be qualified if he can perform the essential functions of his job with an accommodation by the employer, but the accommodation must be reasonable.  Plaintiff argues that he requested as an

accommodation that his supervisors alert him when they observed him being "inattentive, drowsy or fatigue[d]." (Doc. 44 at 9). He asserts he never expressly asked to be awakened from sleep but says his request to his supervisors "impl[ied] it very strongly." (Doc. 36-3 at 96).

Requiring an employer to rouse from sleep a supervisory-level employee whose job requires him remain continually awake and alert is not reasonable. Nor is requiring an employer to monitor the employee to determine when he has become inattentive, drowsy, or fatigued. An accommodation is only reasonable when it allows *the employee* to *perform* his or her essential job functions. Plaintiff's requested accommodation amounts to a request that he be allowed to periodically *cease* performing his essential job functions, resuming them only when reminded by the employer. *See Clark*, 952 F.3d at 584 n.54 ("[A]n employee who is sleeping or unconscious at work cannot perform any of the functions of his job, essential or otherwise, during that time."). It would require Defendant to lower its performance standards, eliminate an essential job function, and divert other employees from their own duties so that they can ensure Plaintiff is performing his. *See Salmon v. Dade Cty. Sch. Bd.*, No. 96-2711-CIV, 4 F. Supp. 2d 1157, 1162 (S.D. Fla. 1998); *Meisenhelder v. Fla. Coastal Sch. of Law, Inc.*, No 3:09-cv-74-HES-TEM, 2010 WL 2028089, at * 4 (M. D. Fla. Feb. 19, 2010). Thus, the requested accommodation is unreasonable as a matter of law. *See, e.g., Frazier-White v. Gee*, 818 F.3d 1249, 1255-57 (11th Cir. 2016) (request for indefinite light duty status unreasonable as a matter of law); *Leme v. So. Baptist Hosp. of Fla., Inc.*, 248 F. Supp. 3d 1319, 1345-46

(S.D. Fla. 2017) (requested accommodation that would eliminate certain duties rather than enabling plaintiff to perform them was per se unreasonable).

For the same reason, Plaintiff has not met his burden of "identifying an accommodation and demonstrating that it is reasonable." *See Frazier-White*, 818 F.3d at 1255. Unless the plaintiff requests a reasonable accommodation, the employer is under no duty to provide one or to enter an interactive process of trying to reach a mutually agreeable accommodation. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000). Plaintiff's unreasonable request did not trigger any duty on the part of Defendant.

In addition, to trigger a duty on the part of the employer, the employee's request must be direct, specific, and identify how it is linked to his disability. *Moreira v. Am. Airlines, Inc.*, 157 F. Supp. 3d 1208, 1216 (S.D. Fla. 2016); *Stanley v. Lockheed Martin Corp.*, 6:11-cv-1649-Orl-36TBS, 2013 WL 3974655, at *11 (M.D. Fla. Aug. 1, 2013); *see also Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1219 (11th Cir. 2008) ("[T]he duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have . . . the ability to conduct a meaningful review of the requested accommodation to determine if such an accommodation is required by law.") (internal quotations omitted).

Plaintiff has failed to demonstrate that he made a *specific* request for a reasonable disability accommodation. He admits he did not "formally" request an accommodation or fill out the available forms for that purpose. (Doc. 36-3 at 179).

Instead, his request was informal, vague, and apparently formulated in different ways on different occasions. He testified that he asked for an accommodation "a half dozen different ways." (*Id*. at 91). The requests sometimes focused on being alerted by his supervisors "at the first inkling" that he was "highly fatigued or something:"

> I think I used words to the effect of if I was showing significant fatigue. And that could or could not be analogous. . . *I asked for . . . well, if you see me looking piqued or, you know, highly fatigued or something*, please bring that to me, and, you know, and give me that point in time. . . . *if you'll let me know if you see the very first even inkling of something like that, please let me know right away*. . . . I didn't ask to – I didn't ask them to wake me up if I fell asleep, although I guess that would be carried to an extreme.

(*Id*. at 94-95) (emphasis added). But Plaintiff sometimes couched his request in terms of generalized help with job performance or simply a request for leniency for non-performance:

> *I asked them to, to let me deal with some low energy, fatiguing, some mental conflicts with my wife.* I had a – I had quite a few things that, you know, were, were troubling me, very troubling at that moment. My wife was threatening a divorce. She drew it up. . . . I was – I was suffering a lot of different– a lot of different ways as a result of the medical condition. *And, and I asked for some help in dealing with those.*
> . . .
>
> I asked them for some help in pointing out to me *anything that I was doing wrong or was not doing up to standards that I – I could possibly improve upon.* If there was something that their eyes saw that mine didn't, to please let me know so that I could correct that situation . . . I pointed to, to my performance standards and the ratings that those gentlemen gave me, in agreement they gave me those highest level assessments, and I said, what does it take to get back there? That's what I asked them for.

(*Id.* at 90-91, 93) (emphasis added).  These requests are insufficiently specific to trigger any duty on the part of Defendant.

In short, there is no evidence to support a reasonable jury finding that Plaintiff was qualified or that he made a specific request for a reasonable accommodation.  Accordingly, summary judgment is granted on Plaintiff's failure to accommodate claim.

### Disparate Treatment

Disability discrimination also occurs when an employer subjects an employee to an adverse employment action because he or she is disabled.  In the absence of direct or statistical evidence of such discrimination, disability discrimination claims are evaluated using the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1241-42 (11th Cir. 2001).  The plaintiff must present evidence to establish a prima facie case of discrimination.  *Id.* at 1242.  If the plaintiff meets that burden, the burden shifts to the defendant to offer a non-discriminatory reason for the adverse action.  *Id.*  If the defendant meets that burden of production, then the plaintiff must present evidence that the proffered reason is pretextual.  *Id.*

As noted above with respect to Plaintiff's accommodation claim, to establish a prima facie case, the plaintiff must show that he or she is a qualified individual.  For the same reasons discussed above, Plaintiff has failed to meet that burden, and that is equally fatal to Plaintiff's disparate treatment claim.

Plaintiff must also establish that he was subjected to an adverse employment action because of his disability. Plaintiff seeks to meet this burden by pointing to evidence that a non-disabled employee, or "comparator," engaged in similar conduct but was treated more favorably. *See, e.g., Caporicci v. Chipotle Mexican Grill, Inc.*, 189 F. Supp. 3d 1314, 1323-24 (M.D. Fla. 2016), *aff'd*, 729 F. App'x 812 (11th Cir. 2018).[2] In order to constitute a proper comparator, the identified individual must be similar to Plaintiff in "all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1225-57 (11th Cir. 2019); *Guinand-Dao v. Baptist Health of S. Fla, Inc.*, No. 19-24233-CIV-O'SULLIVAN, 2021 WL 783824, at *9 (S.D. Fla. Mar 1, 2021). To establish that proposed comparators are similarly situated, the plaintiff must show that they had the same job duties, engaged in the same conduct, were subject to the same employment rules and policies, worked under the same supervisors, and had the same disciplinary history. *Lewis*, 918 F.3d at 1255-57; *see also Ates-Jackson v. Verizon Wireless (VAW) LLC*, 505 F. App'x 871, 873 (11th Cir. 2013); *Mosiejute v. Wal-Mart Stores E., LP*, No. 19-CIV-61046-JMS, 2021 WL 271559, at *7 (S.D. Fla. Jan. 21, 2021).

Plaintiff has failed to present evidence of a proper comparator. Plaintiff asserts that Alan Hartman, a supervisor like Plaintiff, was also found sleeping at his desk on several occasions but was not disciplined. These events, however, took place several years before the events involving Plaintiff in 2017, at a time when

---

[2] The mere fact that Plaintiff was terminated for sleeping on the job, even if that misconduct resulted from a disability, does not by itself constitute disability discrimination. *See Caporicci*, 189 F. Supp. 3d at 1323.

Hartman and Plaintiff worked for Bright House, not for Charter. Hartman did not work under Roger Worden, David Saldarriaga, or John Doctor, the leadership team involved in Plaintiff's termination.[3] Plaintiff points to no evidence that Hartman's disciplinary or counseling history was the same, nor does Plaintiff assert that Hartman engaged in other problematic conduct of the sort that contributed to Plaintiff's being fired, such as performance deficits and taking personal calls while at his desk. Accordingly, summary judgment is granted on Plaintiff's disparate treatment claim.

### *FMLA Interference*

Plaintiff asserts a claim for interference with FMLA benefits, alleging that Defendant failed to provide him with forms to request FMLA leave and "discouraged" him from taking leave. It is undisputed, however, that Plaintiff was granted FMLA leave both times he requested it. An interference claim requires a showing that the interference caused prejudice and that Plaintiff was denied a benefit. *See Mitchell v. Pilgrim's Pride Corp.*, 817 F. App'x 701, 712 (11th Cir. 2020); *Sutherland v. Glob. Equip. Co.,* 789 F. App'x 156, 159 (11th Cir. 2019); *Drago v. Jenne*, 453 F.3d 1301, 1306 (11th Cir. 2006). There is no record evidence of any denial of a benefit or other prejudice to Plaintiff. This failure of proof mandates

---

[3] Plaintiff's declaration states that Hartman "operat[ed] under the same Vice President." (Doc. 44-1 at ¶ 51). Plaintiff asserts that the vice president over Hartman was Alan Smith. The vice president under whom Plaintiff worked in 2017 was John Doctor. The Court therefore reads the declaration as asserting that Hartman and Plaintiff served under the same vice president *at the time of the incidents involving Hartman*, not that Plaintiff worked under Smith in 2017 or that Smith was involved in the decision to terminate Plaintiff in 2017.

summary judgment on Plaintiff's FMLA interference claim. *See, e.g., Southerland*, 789 F. App'x at 159; *Conage v. Web.com Group, Inc.*, No. 3:19-cv-87-J-32JRK, 2020 WL 7385326, at * 6 (M.D. Fla. Dec. 16, 2020); *Juback v. Michael's Stores, Inc.*, 143 F. Supp. 3d 1195, 1211-12 (M.D. Fla. 2015). Accordingly, summary judgment is granted on Plaintiff's FMLA interference claim.

### *FMLA Retaliation*[4]

Plaintiff also asserts a retaliation claim under the FMLA. To establish an FMLA retaliation claim, an employee must demonstrate that the employer intentionally discriminated against the employee for exercising rights under the FMLA. *Guasch v. Carnival Corp.*, 723 F. App'x 954, 957 (11th Cir. 2018). In the absence of direct evidence of the employer's intent, courts addressing FMLA retaliation claims apply the *McDonnell Douglas* burden shifting framework. *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). The employee must allege that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Id*. If the plaintiff can establish a prima facie case, the burden shifts to the defendant to articulate a non-retaliatory reason for the adverse action. *Mosiejute*, 2021 WL 271559, at * 5. The employer's burden is only one of production, not proof: the employer need not

---

[4] Defendant's motion for summary judgment refers to retaliation claims by Plaintiff under both the FMLA and FCRA. It does not appear from the complaint, however, that Plaintiff asserts a retaliation claim under FCRA, nor did Plaintiff's response to Defendant's summary judgment motion address retaliation under FCRA.

persuade the court that its proffered reasons were legitimate. *Burgos-Stefanelli v. Sec'y, Dep't of Homeland Sec.*, 410 F. App'x 243, 247 (11th Cir. 2011). The employer's burden is "exceedingly light." *Id.*

Temporal proximity between a protected activity and an adverse action by the employer generally suffices to establish a prima facie case. *E.g., Strickland*, 239 F.3d at 1207. The Court therefore assumes that Plaintiff has made out a prima facie case because only a few weeks elapsed between his return from FMLA leave and his termination. Defendant, however, has articulated other, legitimate, non-retaliatory reasons for its actions, including Plaintiff's sleeping on the job and other performance problems.

Plaintiff must show those reasons are merely pretextual. This requires that Plaintiff show that the reasons were false and the "true reason for the decision [to terminate him] is [retaliation]." *See Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 303 (11th Cir. 2020). Evidence of pretext must be enough to "allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable." *Callahan v. City of Jacksonville, Fla.*, 805 F. App'x 749, 753 (11th Cir. 2020) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). The plaintiff must "demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Rioux v. City of Atlanta, Ga.*, 520 F.3d

1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

While Plaintiff repeatedly asserts that Defendant's proffered reasons were pretextual, he has presented no evidence other than the mere temporal association, which is generally insufficient to establish pretext. *See, e.g., Sanders. v. Wal-Mart Stores E., LP*, 754 F. App'x 935, 937 (11th Cir. 2019); *Mosiejute*, 2021 WL 271559, at *6. That is particularly the case here given that the performance problems at issue occurred both before and after Plaintiff's taking FMLA leave, Plaintiff was counseled about these problems both before and after his FMLA leave, and Defendant contemplated formal discipline prior to the FMLA leave. *See Maack v. Sch. Bd. of Brevard Cty.*, No. 6:12-cv-612-Orl-28TBS, 2013 WL 6050749, at *9 (M.D. Fla. Nov. 15, 2013); *Rollins v. Banker Lopez & Gassler, PA*, No. 8:19-cv-2336-T-33SPF, 2020 WL 4366083, at *16 (M.D. Fla. July 30, 2020).

Plaintiff has failed to present a prima facie case and has presented no evidence that Defendant's reasons for terminating Plaintiff were pretextual. Accordingly, summary judgment is granted on Plaintiff's FMLA retaliation claim.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 36) is **GRANTED**.

(2) The Clerk is directed to enter judgment in favor of Defendant Charter Communications, Inc. and against Plaintiff Gary Bucklew on all counts

of the complaint.

(3) Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 5th day of April, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**